IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DONALD HONHART, JR., | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 12-146 |
| v. | ) | |
| | ) | Judge Donetta W. Ambrose |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

September 24, 2013

I. **INTRODUCTION**

Donald Honhart, Jr., ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 – 433, 1381 – 1383f ("Act"). This matter comes before the Court on cross motions for summary judgment. (ECF Nos. 8, 10). The record has been developed at the administrative level. For the following reasons, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on January 22, 2008, claiming a disability onset of June 1, 2004. (R. at 173 – 79, 186).[1] He claimed that his inability to work full-time allegedly stemmed from: "epilepsy," "seizure disorder," "no testicles," "anxiety," and "depression." (R. at 191). Plaintiff was initially denied benefits on July 24, 2008. (R. at 88 – 97). Per the request of Plaintiff, an administrative hearing was held on November 4, 2010. (R. at 29 – 83). Plaintiff testified, represented by counsel, and a neutral vocational expert also testified. (R. at 29 – 83). In a decision dated January 18, 2011, the ALJ denied Plaintiff the benefits sought. (R. at 17 – 28). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, but this request was denied on May 2, 2012, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 5).

Plaintiff filed his Complaint in this Court on June 28, 2012. (ECF No. 2). Defendant filed an Answer on October 5, 2012. (ECF No. 5). Cross motions for summary judgment followed. (ECF Nos. 8, 10). The matter has been fully briefed, and is ripe for disposition.

## III. STATEMENT OF FACTS

### A. General Background

Plaintiff was born on March 15, 1969, was thirty eight years of age at the time of his application for benefits, and forty one years of age at the time of the ALJ's decision. (R. at 35). Plaintiff completed the twelfth grade, but had no vocational or post-secondary education. (R. at 197). He spent most of his career working as an automobile mechanic, but also worked as a "tree cutter" for an excavation business, and as a "strobe light repairman" for an electric company. (R. at 192). Plaintiff lived independently in his father's house. (R. at 35). He was single, and had no children. (R. at 35, 37). He maintained a driver's license, and had his own

---

[1] Citations to ECF Nos. 6 – 6-17, the Record, *hereinafter*, "R. at __."

vehicle. (R. at 37 – 38). Plaintiff subsisted on cash assistance and food stamps, and received medical benefits through the state. (R. at 41, 190).

B. Treatment History[2]

As far back as March 2004, Plaintiff had complained of pain in the area of his left groin. (R. at 250). A left inguinal hernia was discovered and surgically repaired in May 2004. (R. at 251). Shortly thereafter, Plaintiff complained of new, and more intense, pain in the region of his left epididymis. (R. at 251). Plaintiff's treating surgeon, David Godfrey, M.D., could not pinpoint a cause. (R. at 251, 254). Plaintiff was considered to be an "unusual patient." (R. at 278). The left epididymis was subsequently removed on January 14, 2004, but only because of Plaintiff's persistent complaints. (R. at 254, 260, 262 – 63). Plaintiff was suspected to have a low pain threshold. (R. at 252). Improvement in Plaintiff's alleged pain was noted by August 2004. (R. at 255).

However, by September 2004, Plaintiff was again complaining of significant pain in the area of his left testicle, and radiating into his groin. (R. at 279, 256). The etiology could not be determined. (R. at 279). Due to the nature of Plaintiff's complaints, a pain specialist and another surgeon declined to treat Plaintiff. (R. at 256). Dr. Godfrey recommended removal of the left testicle in an attempt to alleviate Plaintiff's pain. (R. at 256, 280).

Plaintiff's left testicle was removed by Dr. Godfrey on February 14, 2005. (R. at 258 – 59). Following the removal of his left testicle, Plaintiff reported to Dr. Godfrey in March 2005 that his pain had largely resolved. (R. at 257, 280). Plaintiff was "generally pleased with the results of his surgery." (R. at 257). However, in June 2005 Plaintiff reported to Dr. Godfrey that he was experiencing persistent numbness in his left leg, and some muscle spasm. (R. at 281).

---

[2] In his Motion for Summary Judgment, Plaintiff raises no objections to the ALJ's conclusions regarding the impact of mental impairments on Plaintiff's ability to work. (ECF No. 9 at 10 – 14). As a result, discussion will be limited to the facts on record which pertain to Plaintiff's physical impairments.

There was no clear explanation, and physical examinations were normal. (R. at 281). Dr. Godfrey referred Plaintiff to another physician for evaluation and treatment of his left leg complaints. (R. at 281).

Plaintiff was seen by neurologist Patronio M. Llagan, M.D. on April 27, 2007 following a head injury for which he had earlier sought emergency treatment. Dr. Llagan noted that Plaintiff had a normal EEG and CT scan of the brain. (R. at 308 – 09, 311 – 12). Plaintiff was noted to be a self-employed mechanic at that time. (R. at 309). A physical examination was unremarkable, except for complaints of pain and stiffness in the back, neck, and shoulders. (R. at 310). A motor examination revealed normal muscle tone, bulk, and strength, and no localizing or lateralizing weakness. (R. at 310). Plaintiff was noted to have been non-compliant with treatment recommendations following his visit to the emergency department. (R. at 310). Dr. Llagan considered Plaintiff to be belligerent, and debated discharging Plaintiff from his care. (R. at 310). No additional treatment notes from Dr. Llagan appear in the record.

An MRI of Plaintiff's brain on August 15, 2007 revealed no abnormalities. (R. at 292). That same day, an MRI and x-ray of Plaintiff's right shoulder also demonstrated no abnormality. (R. at 294, 433). An MRI of Plaintiff's cervical spine on August 21, 2007 revealed slightly bulging discs at the C3 – C5 levels of Plaintiff's spine, but no other abnormalities. (R. at 293). An x-ray of Plaintiff's cervical spine showed degenerative joint disease at C3 – C5. (R. at 380). An EEG of Plaintiff's brain in January 2008 displayed intermittent sharp activity in the right temporal region sometimes associated with seizure tendency. (R. at 424). A January 2008 x-ray of Plaintiff's right scapula was unremarkable. (R. at 428).

Plaintiff engaged in physical therapy for his cervical spine pain between June 27, 2008 and July 21, 2008. (R. at 595). His goals were to improve his functional mobility and range of

motion, and to decrease his pain. (R. at 595). The physical therapists indicated that at the time of discharge, Plaintiff had met all his treatment goals. (R. at 595).

Plaintiff again engaged in physical therapy for cervical spine pain and right shoulder muscle strain between September 24, 2008 and October 15, 2008. (R. at 592). Plaintiff achieved a fifty percent reduction in his symptoms. (R. at 592). Plaintiff made steady progress, but still experienced limitation in his range of motion. (R. at 592). An MRI of Plaintiff's cervical spine on December 1, 2008 revealed minimal degenerative joint disease. (R. at 494). A lumbar spine MRI that same day also revealed degenerative joint disease. (R. at 495).

Plaintiff engaged in physical therapy between January 28, 2009 and February 18, 2009 for his cervical spine pain. (R. at 565). Plaintiff reported a sixty percent decrease in his symptoms. (R. at 565). Plaintiff stated that therapy was "definitely helping." (R. at 565). He saw improvements in all aspects of his active range of motion. (R. at 565). An MRI of Plaintiff's lumbar spine on July 28, 2009 demonstrated degenerative disc disease at the L4 – S1 levels of Plaintiff's spine, and moderate left foraminal stenosis at the L5 – S1 level. (R. at 489).

Plaintiff again attempted treatment for his groin pain at a pain clinic on August 11, 2009. (R. at 498 – 500). A physical examination showed normal reflexes and full muscle strength and tone. (R. at 499). Plaintiff was diagnosed with lumbar radiculopathy, lumbar discogenic disease, and left scrotal pain. (R. at 499). An epidural steroid injection was administered. (R. at 499). However, Plaintiff was referred back to his primary care physician in September 2009 after complaining that his pain worsened following the epidural steroid injection. (R. at 497 – 98).

An EMG performed on October 26, 2010, was normal. (R. at 638). There was no evidence of neuropathy, radiculopathy, or plexopathy in Plaintiff's bilateral lower extremities.

5

(R. at 638). A neuromuscular examination showed that Plaintiff also had full strength in his bilateral lower extremities, with decreased sensation to light touch and pinprick. (R. at 637).

      C. <u>Functional Capacity Evaluations</u>

On September 20, 2007, Martin Jacobs, M.D. completed an Employability Re-Assessment Form. (R. at 282 – 83). In it, Dr. Jacobs indicated that Plaintiff was "permanently disabled." (R. at 283). He cited Plaintiff's history of epilepsy and seizures as the only cause. (R. at 283). This was only one month after Dr. Jacobs completed another assessment indicating that Plaintiff was only "temporarily disabled." (R. at 286). No narrative statement or objective clinical findings accompanied either assessment.

On June 2, 2008, V. Rao Nadella, M.D. completed a physical evaluation of Plaintiff on behalf of the Bureau of Disability Determination. (R. at 453 – 57). Dr. Nadella recorded Plaintiff's chief complaints to be seizures, generalized pain, and pain in the neck and back. (R. at 453). Plaintiff reported to Dr. Nadella that he had not experienced a seizure in approximately eight months with medication management. (R. at 454). Plaintiff complained of chronic neck and back pain, particularly when standing, ambulating, and climbing stairs. (R. at 454). For approximately three months prior to the examination, Plaintiff also claimed to experience pain and burning in his lower legs and feet. (R. at 454). Plaintiff took Dilantin for his seizures and Aleve for his pain. (R. at 454). He denied taking other medications. (R. at 454). Inspection of Plaintiff's back and joints showed no tenderness or swelling. (R. at 456). Movement was generally within normal limits. (R. at 456). Plaintiff had normal reflexes and a normal sensory system. (R. at 456). His motor power was at or near full strength in all extremities. (R. at 456). Mentally, Plaintiff was clear, but somewhat depressed. (R. at 457).

On July 24, 2008, state agency evaluator Mary Ryczak, M.D. completed a Physical

Residual Functional Capacity Assessment ("RFC") of Plaintiff. (R. at 458 – 63). Following a review of the medical record, Dr. Ryczak determined that evidence supported finding impairment in the way of seizure disorder, left inguinal hernia repair, and cervical degenerative disc disease. (R. at 458). As a result, Dr. Ryczak opined that Plaintiff could occasionally lift and carry fifty pounds, frequently lift and carry twenty five pounds, stand and walk approximately six hours of an eight hour work day, sit approximately six hours, occasionally climb and balance, and would need to avoid exposure to hazardous machinery and heights. (R. at 459 – 61). Dr. Ryczak indicated that diagnostic testing and imaging provided relatively normal findings with some mild abnormalities. (R. at 463). Plaintiff had not experienced a seizure since November of 2007. (R. at 463). While Plaintiff had significant complaints of pain and limitation, Dr. Ryczak noted that there were substantial gaps in his treatment history. (R. at 463). Plaintiff was considered to be only partially credible. (R. at 463).

On September 16, 2010, Fayyaz Qadir, M.D., and Bonnie Scanlan, C.R.N.P., completed a medical Source Statement Regarding the Nature and Severity of an Individual's Physical Impairments. (R. at 633 – 35). In it, they indicated that Plaintiff could occasionally lift and carry twenty pounds, and frequently lift and carry ten pounds. (R. at 633). Plaintiff could stand and walk one hour of an eight hour work day, and could sit only four hours. (R. at 633 – 34). Additionally, Plaintiff would have to change positions every thirty minutes, and would be off-task for four to eight minutes each time. (R. at 634). Plaintiff would experience limitation with pushing and pulling in all extremities. (R. at 634). He could only occasionally climb, balance, kneel, and crouch, and could never crawl or stoop. (R. at 634). Plaintiff could only do limited overhead reaching. (R. at 634). Plaintiff would need to avoid temperature extremes, dust, humidity/wetness, hazardous machinery and heights, and fumes, odors, chemicals, and gases.

(R. at 635). Plaintiff was also believed to be likely to call off work three times per week, and would need four to eight breaks in excess of five to ten minutes each work day. (R. at 635). No narrative statement accompanied the findings.

D. Administrative Hearing

In response to questioning by the ALJ, Plaintiff testified that he had not sought full-time work since his alleged disability onset date, but had taken on some part-time work. (R. at 42). Plaintiff explained that he was primarily treated by nurse practitioner Scanlan, who was employed by Dr. Qadir. (R. at 45). He had never met Dr. Qadir. (R. at 45). He noted that he had also been seen by specialists for his other physical issues. (R. at 45).

Plaintiff stated that the most significant barrier to re-entering the workforce was constant numbness in his left leg, and shooting pain when he was sitting or standing. (R. at 43). Plaintiff also complained of similar, chronic pain in his left lower back, and cramping in his toes. (R. at 43, 48). He said that his back had been painful for over one year, but his leg had been bothering him for only five or six months. (R. at 43). Activity worsened his pain. (R. at 49). His average pain level was 7/10. (R. at 49).

Plaintiff's next greatest barrier was his neck and shoulder pain. (R. at 50 – 51). Following an accident during which he fell and hit his head off of a concrete floor, Plaintiff had neck and shoulder pain, and seizures. (R. at 51). Plaintiff's seizures were controlled on medication, however. (R. at 51). Plaintiff testified that he was currently involved in physical therapy for his pain, but that he had difficulty lifting his right arm. (R. at 51). He also could not reach behind his back with his right arm. (R. at 52). He said that tests had found a torn muscle in his shoulder. (R. at 52). In the past, physical therapy had provided only temporary relief from his symptoms. (R. at 52). Plaintiff had not been taking any medication for his neck and shoulder

pain. (R. at 53).

Lastly, Plaintiff claimed that left-sided groin pain made it very painful for him to walk. (R. at 53 – 54). He claimed that he experienced "phantom pain," as a result of the removal of his left testicle, as well as pain from a pinched nerve following his hernia surgery. (R. at 53). He claimed that there was no way to alleviate this pain. (R. at 53). Plaintiff also incidentally mentioned that he suffered from migraine headaches since his fall. (R. at 56 – 57).

Plaintiff testified that on a typical day he would clean his apartment and prepare his meals. (R. at 59). His aunt washed his laundry because he did not have laundry machines. (R. at 59). Plaintiff's friend did his grocery shopping because he did not often leave his house. (R. at 60). Plaintiff was capable of independent self-care. (R. at 61). Plaintiff would lie down two or three times per day for at least half an hour to relieve pain. (R. at 70).

Following Plaintiff's testimony, the ALJ asked the vocational expert whether a hypothetical person of Plaintiff's age, educational level, work background, and vocational profile would be eligible for a significant number of jobs in the national economy if limited to sitting for thirty minutes at a time, standing for ten to fifteen minutes at a time, and walking less than one block, without the ability to sit and stand alternately throughout an eight hour work day. (R. at 76). The vocational expert responded that no jobs would be available to such a person. (R. at 77). The ALJ then asked whether a hypothetical person of Plaintiff's age, educational level, and work background would be eligible for jobs if limited to work involving lifting no more than twenty pounds occasionally and ten pounds frequently, no hazardous heights or motorized vehicles, simple, repetitive, and routine activities in a low-stress, low-contact work environment, and no exposure to unventilated work areas with high concentrations of dust, fumes, gases, and vapors. (R. at 77).

The vocational expert replied that such a person would be capable of light exertional work performing "light cleaning," or "housekeeping work," with 1,103,336 such positions available in the national economy, or "operating of plastic molding machines," with 33,392 positions available, or working as a "mailroom clerk," with 89,146 positions available. (R. at 78 – 79). The vocational expert was then asked to explain whether jobs would be available if the hypothetical person had marked limitation in concentration, persistence, and pace. (R. at 80). The vocational expert said that no jobs would be available to such a person. (R. at 80). Next, the vocational expert was asked whether jobs would be available if the hypothetical person had marked limitation maintaining normal work schedules and attendance. (R. at 80). The vocational expert stated that no jobs would be available. (R. at 81).

## IV. STANDARD OF REVIEW

To be eligible for social security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F. 2d 581, 583 (3d Cir. 1986). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his

past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F. 2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g)[3], 1383(c)(3)[4]; *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 431 (3d Cir. 1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart,* 312 F. 3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v.*

---

[3] Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

[4] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

*Shalala*, 55 F. 3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 – 91 (3d. Cir. 1986).

## V. DISCUSSION

In his decision, the ALJ concluded that Plaintiff suffered the following medically determinable severe impairments: a history of seizure disorder, anxiety/depression, groin pain status post hernia surgery and testicle removal, and neck and back pain with evidence of narrowing, stenosis, and degenerative changes. (R. at 22). As a result, the ALJ determined that Plaintiff would be capable of only light work, with the following limitations: lifting no more than twenty pounds occasionally and ten pounds frequently, no use of motorized vehicles, no work at unprotected heights or in unventilated areas with high concentrations of dust, fumes, or vapors, and no more than simple, repetitive, routine tasks performed in a low-contact, low-stress work environment. (R. at 24). Based upon the testimony of the vocational expert, the ALJ found that

– even with the above functional limitations – Plaintiff was capable of engaging in a significant number of jobs in existence in the national economy. (R. at 27 – 28). Plaintiff was, therefore, denied DIB and SSI. (R. at 28).

Plaintiff objects to the decision of the ALJ, arguing that he erred in failing to accord the disability assessment of Dr. Qadir and Ms. Scanlon greater weight, in favor of the opinions of a consultative examiner and non-examining state agency evaluator. (ECF No. 9 at 11 – 14). Defendant counters that the ALJ adequately supported his decision with substantial evidence from the record, and should be affirmed. (ECF No. 11 at 10 – 15). The court agrees with Defendant.

Plaintiff believes that the findings of Dr. Qadir and Ms. Scanlan, findings which – if adopted – would have precluded Plaintiff from full-time work, should have been given great weight by the ALJ. (ECF No. 9 at 11 – 14). He also claims that the ALJ's reliance upon the findings of a consultative examiner and non-examining state agency evaluator cannot constitute substantial evidence, and is not adequate to overcome the findings of Dr. Qadir and Ms. Scanlan. (*Id.*). It is long-established in this Circuit that a treating physician's opinions may be entitled to great weight – considered conclusive unless directly contradicted by evidence in a claimant's medical record – particularly where the physician's findings are based upon "continuing observation of the patient's condition over a prolonged period of time." *Brownawell v. Comm'r of Soc. Sec.*, 554 F. 3d 352, 355 (3d Cir. 2008) (quoting *Morales v. Apfel*, 225 F. 3d 310, 317 (3d Cir. 2000)); *Plummer v. Apfel*, 186 F. 3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler* 826 F. 2d 1348, 1350 (3d Cir. 1987)). However, it has also been held that "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 361 (quoting *Brown v. Astrue*, 649 F. 3d 193, 197 n. 2 (3d Cir. 2011)).

The determination of disabled status for the purpose of receiving benefits – a decision reserved for the Commissioner, only – will not be affected by a medical source simply because it states that a claimant is disabled or unable to work. *Adorno v. Shalala*, 40 F. 3d 43, 47 – 48 (3d Cir. 1994) (citing *Wright v. Sullivan*, 900 F. 2d 675, 683 (3d Cir. 1990)); 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). A showing of contradictory evidence and an accompanying explanation will allow an ALJ to reject a treating physician's opinion outright, or accord it less weight. *Brownawell*, 554 F. 3d at 355. Moreover, a medical opinion is not entitled to any weight if unsupported by objective evidence in the medical record. *Plummer*, 186 F. 3d at 430 (citing *Jones v. Sullivan*, 954 F. 2d 125, 129 (3d Cir. 1991)).

Presently, the ALJ rejected Dr. Qadir and Ms. Scanlan's findings for a number of reasons. First, he cited to the examination findings of Dr. Nadella. (R. at 26). While Dr. Nadella did not provide specific limitations findings, his observations upon physical examination of Plaintiff did not support the kinds of limitations expressed by Dr. Qadir and Ms. Scanlan. (R. at 25 – 26). Second, he cited to the specific limitations findings of Dr. Ryczak, indicating a far lesser degree of impairment than indicated by Dr. Qadir and Ms. Scanlan. (R. at 26). Third, the ALJ noted that Dr. Qadir had never personally examined Plaintiff. (R. at 26). Lastly, Plaintiff's own personal activities were not in accord with his claimed limitations, and those provided by Dr. Qadir and Ms. Scanlan. (R. at 24 – 26). Plaintiff engaged in a full range of daily activities, was capable of functioning independently, and was capable of engaging in part-time work. (R. at 25 – 26). Furthermore, diagnostic imaging studies and EEG and EMG testing yielded relatively normal results, and few findings of mild or moderate abnormality. (R. at 24). This is adequate to constitute substantial evidence.

Plaintiff also claims that neither Dr. Nadella nor Dr. Ryczak was entitled to significant consideration due to the lack of treatment history. Yet, the United States Court of Appeals for the Third Circuit has held that "[s]tate agent opinions merit significant consideration," because "[s]tate agency medical and psychological consultants . . . are experts in the Social Security disability programs." *Chandler*, 667 F. 3d at 361 (citing Social Security Ruling 96-6p). As such, both Dr. Nadella and Dr. Ryczak's conclusions were given proper consideration, and the ALJ's reliance upon them was sufficiently justified.

## VI. CONCLUSION

Based upon the foregoing, the RFC assessment, hypothetical question, and ultimate decision by the ALJ to deny benefits were adequately supported by substantial evidence from Plaintiff's record. Reversal or remand of the ALJ's decision is not appropriate. Accordingly, Plaintiff's Motion for Summary Judgment is denied (ECF No. 8), Defendant's Motion for Summary Judgment is granted (ECF No. 10), and the decision of the ALJ is affirmed. Appropriate Orders follow.

*s/ Donetta W. Ambrose*
Donetta W. Ambrose
Senior United States District Judge

cc/ecf: R. Christopher Brode, Esq.
Brode Law Firm
305 Walnut Street
Meadville, PA 16335
(814) 337-7883

Christine A. Sanner, Esq.
United States Attorney's Office
17 South Park Row, Room A330
Erie, PA 16501
(814) 452-2906

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD HONHART, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 12-146 |
| v. ) | |
| ) | Judge Donetta W. Ambrose |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER OF COURT

AND NOW, this 24th day of September, 2013, in accordance with the foregoing Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff Donald Honhart, Jr.'s Motion for Summary Judgment [8] is DENIED, Defendant Commissioner of Social Security's Motion for Summary Judgment [10] is GRANTED, and the decision of the Commissioner of Social Security is AFFIRMED, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

                *s/ Donetta W. Ambrose*
                Donetta W. Ambrose
                Senior United States District Judge

cc/ecf: R. Christopher Brode, Esq.
   Brode Law Firm
   305 Walnut Street
   Meadville, PA 16335
   (814) 337-7883

   Christine A. Sanner, Esq.
   United States Attorney's Office
   17 South Park Row, Room A330
   Erie, PA 16501
   (814) 452-2906